# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DUSAN DRAGISICH,<br><br>                Plaintiff,<br><br>v.<br><br>CHRISTOPHER SCHMALING, RACINE COUNTY JAIL, CAPTAIN BRADLY FRIEND, MEND INC., LATISHA RAMOS, and LANCE WIERSBA,<br><br>                Defendants. | Case No. 21-CV-672-JPS<br><br>**ORDER** |

      Plaintiff Dusan Dragisich, who is currently confined at Dodge Correctional Institution and is proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. On September 7, 2021, Magistrate Judge Stephen C. Dries screened Plaintiff's complaint and determined that it did not state a claim upon which relief could be granted. ECF No. 10. However, Plaintiff was given an opportunity to amend his complaint, and he filed an amended complaint on December 29, 2021. ECF No. 23. As not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was randomly reassigned to a U.S. District Court Judge to screen the amended complaint.

1.     **FEDERAL SCREENING STANDARD**

      Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. **PLAINTIFF'S ALLEGATIONS**

On June 15, 2020, Plaintiff, who was on extended supervision at the time, found himself detained and subsequently arrested on suspicion of

driving while intoxicated. ECF No. 23 at 7, 13. Plaintiff was generally displeased with the privacy and nature of his arrest and initial medical clearance, but his complaint centers around the inadequate medical care that he received at Racine County Jail ("RCJ"), where he served his revocation sentence.

At some point—it is unclear when—Plaintiff broke his cervical spine at the fourth, fifth, and sixth vertebrae. *Id.* at 6. He alludes to a delay in treatment that led the bones to heal in an improper fashion, which resulted in pain and nerve damage. *Id.* A neurosurgeon at Aurora St. Luke's recommended a certain type of surgery to alleviate Plaintiff's pain, but RCJ did not take any steps to address the issue. Plaintiff was particularly concerned that RCJ either did not have certain medical records or has failed to release certain medical records. Plaintiff filed several complaints with both RCJ and the Department of Corrections seeking attention for the spinal injury, but to no avail. *Id.* at 10. Rather, the medical department at RCJ "ignored [him] for a while," and nurses "retaliated by overcharging copays for chronic conditions, charging for the same issue, going against the specialist['s] diagnosis, [and] telling [him that his] neck is unfixable . . . and then laughing about it[.]" *Id.* at 12.

While serving his revocation sentence at RCJ, Plaintiff experienced tremendous difficulty obtaining several different prescribed medications. When he first arrived at RCJ on suspicion of driving while intoxicated, RCJ staff refused to provide Plaintiff with certain prescription medications until he passed a clean urine test. However, Plaintiff alleges that RCJ staff did not promptly resume medications once he detoxified. Rather, this initial period of medication denial set the stage for a series of issues with his medications: the medical staff routinely ordered medication for him and then refused to

issue them; he "constantly" ran out of medications before the medical staff placed a refill order; and staff lagged on distributing his medication around his court dates. *Id.*

Additionally, Plaintiff alleges that there were issues with the types of medication that he received. He explains that a Jane Doe medical staff member prescribed Topiramate to manage the nerve pain associated with his spinal injury. This was not the medication that Plaintiff's specialist prescribed, and Plaintiff grew concerned. When he inquired after possible side effects, the health center gave him only five of thirteen pages of possible side effects. Ultimately, he learned that potential side effects included visual impairments due to degeneration of the optic nerve and adverse cognitive effects, as well as potential liver damage and interactions with other drugs. He recognized some of these side-effects in himself and ceased taking the medication, believing that it was wholly inappropriate for him. He alleges that RCJ purposefully prescribed this medication without informing him of the side effects.

Finally, Plaintiff alleges that RCJ staff took Plaintiff's bifocal glasses upon his intake into the jail and did not return them until July 21, 2020, when a mental health provider inquired after them and facilitated their return. *Id.* at 9. Plaintiff needs the glasses to both read and see at far distances; without them, he was forced to rely on other inmates to help him through the day. On at least one occasion, a probation agent tricked Plaintiff into signing a document that he did not intend to sign after he told her that he could not read without his glasses. *Id.* It is not clear why RCJ withheld Plaintiff's glasses for so long.

### 3. ANALYSIS

The Eighth Amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A claim of deliberate indifference based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Id.* (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). At this juncture, "knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion), the lack of detail does not permit dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Plaintiff has sufficiently alleged three serious medical needs: (1) an injured spine with attendant nerve damage and pain; (2) various prescription medication needs, including those associated with his neurological issues; and (3) poor vision that renders him unable to read. He also alleges that RCJ medical staff acted with deliberate indifference to him because they knew of his medical issues but (1) failed to follow his specialist's instructions for spinal surgery; (2) failed to provide him with continuous and appropriate medications; and (3) took his glasses and refused to return them for over a month. The Court will permit Plaintiff to proceed on these three claims. Plaintiff has not identified the RCJ medical staff members who allegedly violated his rights by name; therefore, the Court will instruct the Clerk of Court to add "John or Jane Doe Medical Staff" to the docket in order to facilitate the case administration.

Plaintiff's amended complaint also refers to other issues at RCJ, including the health center's imposition of co-pays which risk adversely affecting one's credit report if left unpaid; delay in receipt of legal mail "a couple of times," including, in one instance, RCJ intercepting the hand-delivered letter from his attorney; and an issue with an abdominal blockage that he feels was handled slowly and without respect for his privacy. These issues, while troubling, are described in passing, without sufficient context as to the people involved, the duration of the harm, or any timeline of events. The Court will refrain from analyzing these issues due to their want of detail and apparent lack of connection to the primary issues in the amended complaint.

Additionally, although the amended complaint states several claims, it is not clear *who* participated in the harm. The Court does not discern any claims against Captain Bradley Friend, Latisha Ramos, or Lance Wiersba. Additionally, Plaintiff's allegations regarding an unconstitutional policy that resulted in his harm, such that either RCJ or Mend, Inc. ("Mend") (which provides healthcare services to RCJ) could be liable under a *Monell* framework of liability, are underdeveloped. At one point, Plaintiff alleges that RCJ and Mend discontinued his treatment due to their "policy, practice, procedures, discretionary decisions." ECF No. 23 at 9. This statement does not adequately identify what that procedure was—it is essentially conclusory. Moreover, the statement is vague in its conclusiveness because a "discretionary decision" of a policymaker is different from a policy. Additionally, later in the amended complaint, Plaintiff mentions that RCJ and Mend had a practice of over-charging or double billing for certain medical interventions. However, Plaintiff then indicates that the discontinued treatment and over-charging practices were

retaliatory actions taken towards him, specifically (and thus, it can be inferred, not a custom, policy, or practice subject to *Monell* liability). *Id.* at 12. This analysis is not to say that Plaintiff could never allege a *Monell* claim on these facts, only that he has not done so here. For these reasons, all of these defendants will be dismissed from this action.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Deliberate indifference to Plaintiff's spinal injury against John or Jane Doe Medical Staff;

**Claim Two:** Deliberate indifference to Plaintiff's prescription medication needs against John or Jane Doe Medical Staff; and

**Claim Three:** Deliberate indifference to Plaintiff's corrective lens needs against John or Jane Doe Medical Staff.

To facilitate service of the amended complaint and identification of the Doe defendants, the Court will retain the sheriff of the jail, Racine County Sheriff Christopher Schmaling ("Schmaling"), as a defendant in this action. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Plaintiff is advised that in the Court's scheduling order, which will be issued after Schmaling is served, Plaintiff will be afforded a period of time in which to conduct discovery of the identities of the Doe defendants. He should seek this information from Schmaling. Plaintiff's failure to amend the complaint to identify the Doe defendants by the deadline set forth in the scheduling order may result in dismissal of this action. Once Plaintiff identifies the Doe defendants, the Court will dismiss Schmaling as a defendant, since there is no allegation that Schmaling has done anything wrong or that he

participated in Plaintiff's medical treatment in any fashion. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that defendants Racine County Jail, Captain Bradley Friend, Mend Inc. Co., Latisha Ramos, and Lance Wiersba be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the Clerk of Court add John or Jane Doe Medical Staff to the case docket as defendants;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the amended complaint and this Order upon Christopher Schmaling pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that the John or Jane Doe Medical Staff shall file a responsive pleading to the amended complaint;

**IT IS FURTHER ORDERED** that if the defendants file a motion to dismiss, the parties must meet and confer before the motion is filed. The defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and the plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If the defendants file a motion to dismiss, the plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Prisoners who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.